UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIVATE FINANCING ALTERNATIVES, LLC,

    Plaintiff,

v.

WALLOON LAKE HOLDINGS, LLC, et al.,

    Defendants.
_____/

Case No. 1:25-cv-165

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Private Financing Alternatives, LLC, brings this action to recover money loaned to Defendant Walloon Lake Holdings, LLC ("Walloon Holdings"). Defendants Matthew Borisch, Jonathan Borisch, Mary Borisch, and the Matthew Allen Borisch Trust ("Trust") allegedly agreed to guarantee repayment of the loan. Defendants JLB Restaurant Holdings, LLC ("JLB") and Hotel Walloon, LLC ("Hotel Walloon") are tenants on properties owned or controlled by Walloon Holdings. Before the Court is Defendants' motion for judgment on the pleadings (ECF No. 29), Plaintiff's motion to strike affirmative defenses to the complaint (ECF No. 20), Plaintiff's motion for leave to file an amended complaint (ECF No. 37), and Plaintiff's motion to appoint a receiver (ECF No. 42). For the reasons herein, the Court will deny the motion for judgment on the pleadings, deny Plaintiff's motion to strike, allow Plaintiff to amend its complaint, and deny Plaintiff's motion to appoint a receiver.

### I. BACKGROUND

**A. Plaintiff's Complaint**

Plaintiff alleges that it loaned Walloon Holdings $10,000,000 under a note signed by Walloon Holdings (the "Note"). (Compl. ¶ 14, ECF No. 1; *see* Promissory Note, ECF No. 1-1.)

As security for repayment, Walloon Holdings mortgaged "13 commercial properties" to Plaintiff. (Compl. ¶ 17; *see* Mortgage, ECF No. 1-3.)  As additional security, Walloon Holdings assigned its leases with, and rents from, commercial tenants on some of the properties.  (Compl. ¶¶ 20-21.)  The Note required monthly payments beginning in September 2023 through August 2024, and a single "balloon payment" for the remaining balance of the loan, with interest, due on September 29, 2024.  (*Id.* ¶ 31.)  Plaintiff alleges that Defendants have defaulted on their obligations under the Note and accompanying agreements.  It brought this action in February 2025 to recover damages for breach of the Note and the guarantees, to foreclose on the mortgage, and to require the tenants to comply with the lease assignments.

### B. Procedural History

After Plaintiff filed its complaint, Defendants filed an answer with affirmative defenses (ECF No. 16), followed by an amended answer with affirmative defenses (ECF No. 18).  Plaintiff then filed a motion to strike the affirmative defenses (ECF No. 20).

Defendants subsequently filed a motion for judgment on the pleadings (ECF No. 29).  While that motion was pending, Plaintiff sought leave to file an amended complaint (ECF No. 37).  Later, Plaintiff filed a motion to appoint a receiver (ECF No. 42).

## II. JUDGMENT ON THE PLEADINGS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The Court analyzes a motion for judgment on the pleadings using the same standard for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025).  That is, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Id.* (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549

(6th Cir. 2008)).  In its analysis, "[t]he court may consider 'documents attached to the pleadings,' documents that are 'referred to in the pleadings and [are] integral to the claims,' and 'matters of public record' without converting a motion for judgment on the pleadings to a motion for summary judgment." *Id.* (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007)).

Plaintiff argues that Defendants' motion is premature because the pleadings are not closed. Plaintiff contends that the pleadings do not close until after the deadline for amending the pleadings has expired.  On the contrary, "[t]he pleadings are closed after the filing of the complaints, answers, and any replies ordered by the court." *Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 913 (6th Cir. 2017).  Defendants filed their answer before filing their motion for judgment on the pleadings, so the motion is not premature.

In their motion, Defendants argue that they are entitled to judgment because the Note is not enforceable.  In particular, Defendants contend that the rate of interest the Note charged exceeds the maximum rate permitted by Michigan's criminal usury statute, Mich. Comp. Laws § 438.41.  The latter provides that charging interest "at a rate exceeding 25% at simple interest per annum" is "criminal usury" when "not . . . authorized or permitted by law." *Id.*  Here, the Note, which is attached to the complaint, states that the "minimum interest" Plaintiff will "earn" during the one-year term of the loan is $3,300,000.  (Note, PageID.27.)  For a loan of $10,000,000, that amount of interest in one year would equate to an annual interest rate of 33%.

In response, Plaintiff relies on an exception to the criminal usury rate, which applies to "indebtedness of $100,000.00 or more," where "the bona fide primary security . . . is a lien against real property other than a single family residence." Mich. Comp. Laws § 438.31c(11).  In such cases, the parties "may agree in writing for the payment of any rate of interest." *Id.*  Indeed,

3

nothing in the complaint indicates that the primary security for the loan to Walloon Holdings was a single-family residence. In fact, the complaint alleges that the loan was secured by "13 commercial properties," which may or may not refer to single-family residences. (Compl. ¶ 17.) An exhibit to the mortgage agreement identifies those 13 properties according to their legal descriptions. (Ex. A to Mortgage, ECF No. 1-3, PageID.54-59.) Those descriptions do not indicate whether those properties are single-family residences. According to the complaint, however, three of those properties were used for business. One was used for operation of a hotel, one for operation of a restaurant, and one for operation of an inn. (Compl. ¶ 21.) Such buildings are not single-family residences.

Defendants insist that the exception does not apply because the property securing the loan initially included 20 single-family residences. In their amended answer to the complaint, Defendants assert that the properties covered by the mortgage agreement included 16 single-family condominium units, and that "other mortgages executed by Defendants included 4 additional single family residences in Florida and Michigan." (Am. Answer, ECF No. 18, PageID.291.) According to Defendants, if the security for the loan from Plaintiff includes any single-family residences, then the exception in § 438.31c(11) does not apply.

The Court disagrees. The exception to the criminal usury rate applies where the "bona fide *primary* security" is real property other than a single-family residence. Mich. Comp. Laws § 438.31c(11) (emphasis added). Defendants' interpretation ignores the word "primary." In other words, § 438.31c(11) does not expressly require that the *entire* security for the loan be real property that is not a single-family residence. Instead, it requires that the *primary* security is not a single-family residence. That descriptor implies that a single-family residence can be part of the secured real estate, so long as it is not the "primary" security. *Cf. Mfrs. Nat'l Bank of Detroit v. Pink*, 341

4

N.W.2d 181, 184 (Mich. Ct. App. 1983) ("[T]he trial court found, and this Court agrees, that the security for the note was *primarily* a real estate obligation.") (emphasis added) (applying § 438.31c(11), then located at § 438.31c(10)).

The Michigan Court of Appeals has interpreted the phrase "primary security" in the usury statute on several occasions. In *Macklin v. Brown*, 314 N.W.2d 538 (Mich. Ct. App. 1981), the court examined Mich. Comp. Laws § 438.31c(2), which provides that parties to a note can agree in writing to any rate of interest where "the bona fide primary security" for the loan "is a first lien against real property." *Id.* The court held that the phrase "primary security" refers to "security which the creditor would sell first and to which he would look to obtain the greatest yield to pay the indebtedness due." *Macklin*, 314 N.W.2d at 540. "'Primary' is defined as 'First in order of time, or development, or in intention.'" *Id.* (quoting Black's Law Dictionary (4th ed)).

In *Macklin*, the debtors purchased a business, a building, and its fixtures for $110,000, using a loan for $82,500. *Id.* at 539. The building and fixtures (i.e., the real property) were worth only $47,500 at the time of sale, less than 50% of the overall sale price, so the defendants argued that the interest rate was usurious and that the exception in § 438.31c(2) did not apply because the real property was not the primary security for the debt. The court disagreed because "the sale price of the business was irrelevant"; the building and fixtures were the primary security for the $82,500 debt. *Id.*

In *Mac Leod v. Bay Haven Marina, Inc.*, No. 187688, 1997 WL 33347816 (Mich. Ct. App. June 13, 1997), the Michigan Court of Appeals applied *Macklin*'s definition of "primary security" to § 438.31c(11), the usury exception at issue here. The plaintiffs in *Mac Leod* had obtained a loan from a bank to purchase a boat from the defendant. When the plaintiffs defaulted on that loan, they made an agreement with the defendant whereby the defendant would pay off the

5

plaintiffs' debt to the bank. *Mac Leod*, 1997 WL 33347816, at *1. In exchange, the plaintiffs gave the defendant title to the boat and a mortgage on two parcels of real estate. *Id.* The defendant paid the bank $110,000 and sold the boat for $70,000, leaving a deficiency that the plaintiffs owed the defendant. The plaintiffs contended that their agreement with the defendant charged a usurious rate of interest and that § 438.31c(11) did not apply because the boat was the primary security for their debt to the defendant rather than the real estate. The court disagreed, concluding that while the boat reduced the plaintiffs' initial indebtedness, it did not act as the primary security because it did not ensure recovery in the event that the plaintiffs defaulted on their debt. *Mac Leod*, 1997 WL 33347816, at *2.

Defendants argue that *Macklin* is distinguishable because it interpreted a different statutory subsection. But the phrase at issue, "bona fide primary security," is the same in both sections. Moreover, as discussed above, the court in *Mac Leod* applied *Macklin*'s definition to § 438.31c(11); *see also Paul v. U.S. Mut. Fin. Corp.*, 389 N.W.2d 487, 493 (Mich. Ct. App. 1986) (doing the same but concluding that the exception did not apply because the note was secured by personal property). Thus, the Court of Appeals has indicated that it would apply the same definition to both sections.

Applying that definition here, Defendants are not entitled to judgment on the pleadings. The Court cannot tell from the pleadings alone whether any security interest Plaintiff possessed in single-family residences was the "primary" security for Defendants' debt to Plaintiff. Even if Plaintiff possessed a security interest in some single-family residences, § 438.31c(11) might still apply if real property other than single-family residences was the "primary" security for the debt. To determine what property was the primary security, the Court needs more information about the property that secured the loan.

6

Defendants also rely on a Michigan Attorney General opinion regarding allowable interest rates on loans for residential property. That opinion states that "[a]n unqualified lender under federal and state law is limited to the maximum rate of 11% simple interest on loans secured by a first lien on residential real property." 1979-1980 Mich. Att'y Gen. Op. 942, 1980 WL 113917, at *3 (Aug. 28, 1980). However, that opinion does not expressly address the exception in § 438.31c(11). In other words, it does not discuss the circumstances here, where it appears the loan was secured by commercial property as well as residential property. Thus, the opinion does not support Defendants' argument that § 438.31c(11) does not apply.

In addition, as Plaintiff notes, the Attorney General opinion does not account for the "business entity" exception to the usury restrictions in Mich. Comp. Laws § 438.61, which was amended as recently as 1997. Under the current version of that exception, a nonregulated lender like Plaintiff can extend credit to a "business entity" at "any rate of interest not exceeding the rate allowed under [the criminal usury statute]." Mich. Comp. Laws § 438.61(3); *see Equine Luxury Props., LLC v. Com. Capital BIDCO, Inc.*, No. 1:23-cv-1142, 2024 WL 2768514, at *5 (W.D. Mich. May 30, 2024) (discussing the business entity exception). In other words, even if § 438.31c(11) does not apply, Michigan law permitted Plaintiff to lend money to Walloon Holdings, a business entity, at a rate up to 25%. As discussed below, Plaintiff's proposed amended complaint suggests that the actual rate of interest on the $10,000,000 loan to Walloon Holdings was 22%.

In short, Defendants' arguments are not persuasive. Accordingly, the Court will deny Defendants' motion for judgment on the pleadings.

### III. MOTION TO AMEND COMPLAINT

Plaintiff asks for leave to amend the complaint. Plaintiff may amend its complaint "with leave of the court." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so

requires." *Id.* "The decision as to whether justice requires the amendment is committed to the district court's sound discretion." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue or allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182-83 (1962).

Defendants argue that the Court should deny leave because the proposed amendment would be futile. "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

In support of futility, Defendants again argue that the loan at issue is usurious and that the exception in Mich. Comp. Laws § 438.31c(11) does not apply. However, the proposed amended complaint clarifies that the entire loan to Defendants was $15,000,000, including the Note and "two smaller loans totaling $5,000,000" (one to the Trust and one to Jonathan and Mary Borisch). (Proposed Am. Compl. ¶¶ 14, 25, ECF No. 37-1.) With $3,300,000 of interest, the interest rate on the total loan amount would be 22%, which is below the criminal usury rate. Similarly, the Note states that the "floor interest rate" is 22% (Note, PageID.26), and the notes for the smaller loans state that the interest rate for each of those loans is 22%. (Note 2, ECF No. 18-2, PageID.327; Note 3, ECF No. 18-2, PageID.334.) In addition, *all* the notes state that the minimum interest Plaintiff will earn is $3,300,000, which further suggests that the notes are all related and that the $3,300,000 of minimum interest earnings applies to the total loan amount of $15,000,000, not to

8

any single loan. In other words, these documents suggest that the actual interest rate for each loan was approximately 22% and did not exceed the criminal usury rate of 25%.[1]

Furthermore, the amended complaint alleges that, at the time of closing, a significant number of the properties secured by the loan were not single-family residences. These properties included a restaurant, a hotel, an inn, a restaurant, an event space, a retail space, and unimproved land. (*See* Proposed Am. Compl. 28-30; *id.* ¶ 32 (alleging that the mortgage "encumbers 13 commercial/industrial/undeveloped land properties"); *id.* ¶¶ 42, 49-52 (alleging that the 16 residential condominiums were not part of the collateral at closing; they were built after the closing without Plaintiff's knowledge).) From these allegations, it is plausible to infer that the *primary* security for the loan to Walloon Holdings was real property other than a single-family residence, meaning that the exception in § 438.31c(11) would apply. For reasons discussed above, the Court is not persuaded by Defendants' argument that the inclusion of any single-family residence in the secured property precludes Plaintiff from relying on the foregoing exception.

Accordingly, the Court will grant leave to amend the complaint because the amendment is not futile and the amendment would serve the interests of justice.

### IV. MOTION TO STRIKE

Plaintiff asks the Court to strike the affirmative defenses from Defendants' amended answer to their complaint. "Rule 12(f) allows a court to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care*

---

[1] Plaintiff does not seek recovery of the smaller loans (Proposed Am. Compl. ¶ 30), so the usury defense raised by Defendants only applies to the $10,000,000 loan to Walloon Holdings.

*Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953)).

Plaintiff contends that the affirmative defenses are simply legal conclusions with no supporting facts. The Court will deny this motion as moot. The Court will allow Plaintiff to file its proposed amended complaint, which will take the place of the original complaint and will allow Defendants to file another answer.

### V. MOTION TO APPOINT RECEIVER

Plaintiff asks the Court to appoint a receiver to collect rent from tenants on the secured properties and to preserve and protect the properties. "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also* Fed. R. Civ. P. 66. Relevant here, "the court may appoint a receiver of mortgaged property to protect and conserve it pending foreclosure." *Gordon v. Washington*, 295 U.S. 30, 37 (1935).

"A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 Charles Alan Wright, et al., Federal Practice and Procedure § 2983 (3d ed. 2014)). As Plaintiff acknowledges, district courts have considered factors like the following when determining whether to appoint a receiver:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy

10

of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

*PNC Bank, N.A. v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014).

Plaintiff does not meaningfully address these factors. In particular, it does not address whether the security interest it possesses in the secured properties would be adequate to recoup its debt. Indeed, Defendants have presented evidence that the secured properties are worth over $27,000,000 after accounting for mortgages to another party, far more than the $10,000,000 loaned to Walloon Holdings. (Property Valuations, ECF No. 53-1, PageID.1132.) Also, there is no evidence that the secured properties are in imminent danger of losing value.

Plaintiff indicates that some companies owned by Matthew Borisch and the Trust have sought bankruptcy protection, and that Matthew Borisch, Jonathan Borish, and the Trust are judgment debtors for multi-million dollar judgments in a case in Kent County Circuit Court; however, Plaintiff does not indicate how the financial condition of those individuals and entities impact Walloon Holdings or the secured property.

In addition, the Court is unable to conclude that Plaintiff is likely to succeed in the matter before adjudicating whether real property other than a single-family residence was the primary security for its loan to Walloon Holdings. The parties have not briefed that issue.

## VI. SUBJECT MATTER JURISDICTION

Finally, the Court has detected a possible issue with its subject matter jurisdiction. Plaintiff's complaint invokes diversity jurisdiction, which applies where the action is between citizens of different states and the amount in controversy is more than $75,000. 28 U.S.C. § 1332(a)(1). A party invoking diversity jurisdiction must allege the citizenship of all parties so

that the Court can confirm the existence of complete diversity.  *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).  Plaintiff has not satisfied that requirement.

Plaintiff, Walloon Holdings, JLB, and Hotel Walloon are limited liability companies.  The citizenship of a limited liability company is the citizenship of each of its members.  *Id.*  Consequently, for the Court to confirm that it has diversity jurisdiction, the Court "needs to know the citizenship of each member of the company.  And because a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well."  *Id.*

But here, Plaintiff alleges no facts about the members of Plaintiff, Walloon Holdings, JLB, or Hotel Walloon, other than to state that Plaintiff's members are "all situated" in Florida and that Defendants' members are "all situated" in Michigan "or in a state other than Florida."  (Compl. ¶¶ 2-3, 8-9.)  Being "situated in" Florida or Michigan is not equivalent to citizenship in either of those states.  Similarly, alleging that party is a citizen of a state "other than Florida" is not sufficient because it does not allege the citizenship of that party.  Indeed, it is not clear whether the members of Plaintiff or of the LLC Defendants are individuals, corporations, limited liability companies, or some other corporate form, each of which has a unique test for citizenship.  Thus, Plaintiff's allegations are not adequate to assure the Court that it has subject matter jurisdiction over this action.

## VII. CONCLUSION

For the reasons herein, the Court will deny Defendants' motion for judgment on the pleadings, deny Plaintiff's motion to strike, grant Plaintiff's motion for leave to amend the complaint, and deny Plaintiff's motion to appoint a receiver.  In addition, the Court will require Plaintiff to show cause why the Court should not dismiss the case for lack of subject matter jurisdiction.

An order will enter consistent with this Opinion.


Dated: November 26, 2025                         /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE