UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIVATE FINANCING ALTERNATIVES,
LLC,

      Plaintiff,

                                        Case No. 1:25-cv-165

v.

                                        Hon. Hala Y. Jarbou

WALLOON LAKE HOLDINGS, LLC, et
al.,

      Defendants.
_____/

## **OPINION**

Plaintiff Private Financing Alternatives, LLC, brings this action to recover $10 million it loaned to Defendant Walloon Lake Holdings, LLC, under a promissory note executed on September 29, 2023. Defendants Matthew Borisch, Jonathan Borisch, Mary Borisch, and the Matthew Allen Borisch Trust agreed to guarantee repayment of the loan. Defendants JLB Restaurant Holdings, LLC, and Hotel Walloon, LLC, are tenants on properties owned or controlled by Walloon Lake Holdings. Before the Court is Private Financing's motion to collect rents paid by JLB and Hotel Walloon to Walloon Lake Holdings (ECF No. 92).

## **I. BACKGROUND**

The $10 million note signed by Walloon Lake Holdings required monthly payments to Plaintiff beginning in September 2023 through August 2024, and a single "balloon payment" for the remaining balance of the loan, with interest, due on September 29, 2024. (Note 1, ECF No. 1-2, PageID.25–26.) On the same day that the parties entered Note 1, Plaintiff issued a $2 million loan to Mary and Jonathan Borisch (Note 2, ECF No. 18-2, PageID.326) and a $3 million loan to the Trust (Note 3, ECF No. 18-2, PageID.334). Plaintiff does not seek recovery of the two smaller

loans, however.  It alleges that it canceled the two smaller notes, leaving only the $10 million note outstanding.  (2d Am. Compl. ¶ 30, ECF No. 120.)

As security for repayment of Note 1, Walloon Lake Holdings allegedly mortgaged "13 commercial properties" to Plaintiff.  (2d Am. Compl. ¶ 136; *see* Mortgage, ECF No. 1-3.)  As additional security, Walloon Lake Holdings assigned its lease agreements with, and rents from, JLB and Hotel Walloon.  (*See* Recorded Assignment of Leases & Rents, ECF No. 1-9.)  Plaintiff contends that Defendants have defaulted on their obligations under Note 1 and accompanying agreements.  It brought this action in February 2025 to recover damages for breach of the note, to foreclose on the mortgage, and to require the tenants on the properties (JLB and Hotel Walloon) to comply with the lease assignments by paying rents to Plaintiff.

## II. COLLECTION OF RENTS

### A. MUARA

Michigan's Uniform Assignment of Rents Act (MUARA), Mich. Comp. Laws § 554.1051 *et seq.*, permits lenders to perfect a security interest in rents by recording the landlord's assignment of that interest and then to enforce that interest against the landlord and tenant upon default.  Mich. Comp. Laws § 554.1055.  Here, Walloon Lake Holdings assigned to Plaintiff its lease agreements with, and right to collect rents from, JLB and Hotel Walloon as security for Plaintiff's loan to Walloon Lake Holdings.  (Recorded Assignment of Leases & Rents, PageID.122–23.)  Plaintiff perfected its interest by recording the assignment agreement with the Charlevoix County Register of Deeds in February 2025.  (*Id.*, PageID.116.)  That agreement expressly permits Plaintiff to collect rents from Walloon Lake Holdings and its tenants upon default.  (*Id.*, PageID.124.)

One way that MUARA permits the lender to enforce an assignment of rents is by demanding that the tenant pay rents to the lender instead of the landlord-debtor.  Mich. Comp. Laws § 554.1059(1).  Following receipt of notice from the lender, the tenant must pay the lender

2

all "unpaid accrued rents and all unaccrued rents as they accrue." *Id.* § 554.1059(3)(a).  The

tenant's obligation "continues until the tenant receives a court order directing the tenant to pay the

rent in a different manner." *Id.* § 554.1059(3)(d).  Here, Plaintiff has provided a copy of the notice

that it mailed to Walloon Lake Holdings, Jonathan Borisch, Mary Borisch, Matthew Borisch, and

the Trust.  (*See* Notice of Default, ECF No. 1-9.)  And by filing that notice on the docket, Plaintiff

has provided a copy of that notice to JLB and Hotel Walloon as well.

Defendants argue that the notice is deficient because it does not contain all the elements

required by law.  Among other things, such a notice must "[d]escribe the manner in which

subsections (3) and (4) affect the tenant's payment obligations."   Mich. Comp. Laws

§ 554.1059(1)(e).  Subsection (3) provides that the tenant's payment obligations are subject to

"any . . . claim or defense that a tenant has . . . under the law of the United States or this state." *Id.*

§ 554.1059(3).  Defendants argue that they have a defense under the wrongful-conduct rule

because Note 1 charged a usurious rate of interest.  They contend that the notice says nothing about

how this defense would impact the tenants' payment obligations.  However, the statute only

requires that a notice "substantially comply[]" with the requirements in subsection (1).  *Id.*

§ 554.1059(1).  It does not require perfect compliance.  Also, JLB and Hotel Walloon are aware

of the wrongful conduct defense, so any omission of that defense from the notice is harmless and

not substantial.

### B. Wrongful-Conduct Rule

Defendants object to Plaintiff's request for relief, contending that Note 1 is not enforceable

due to Michigan's wrongful-conduct rule because the note charges a rate of interest that exceeds

the rate permitted by Michigan's criminal usury state.  "Michigan courts have long recognized the

existence of the wrongful-conduct rule." *Orzel by Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 213

(Mich. 1995).  Generally, the rule provides that "[a] plaintiff cannot maintain an action if, in order

to establish his cause of action, he must rely, in whole or part, on an illegal or immoral act or transaction to which he is a party." *Id.* at 212 (citation omitted). "The rationale that Michigan courts have used to support the wrongful-conduct rule are rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Id.* at 213.

Michigan's criminal usury statute makes it unlawful for a lender to "knowingly charge[], take[] or receive[] any money or other property as interest on [a] loan . . . at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period," unless otherwise permitted by law. Mich. Comp. Laws § 438.41. Unlawfully charging a rate of interest higher than 25% can trigger the wrongful-conduct rule. *Scalici v. Bank One, NA*, No. 254632, 2005 WL 2291732, at *2 (Mich. Ct. App. Sept. 20, 2005).

Note 1 is usurious on its face. The note states that the "floor interest rate" is 22% (Note 1, PageID.26), which is lower than 25%. Defendants point to a provision in the Note stating that the "minimum" amount of interest Plaintiff "will earn" over the one-year term of the loan is $3.3 million. (Note, PageID.26.) Taken on its own, this amount suggests that the actual interest rate for Note 1 was 33%, far higher than the criminal usury rate. But Note 1 does not stand on its own. The parties entered several other agreements contemporaneously with Note 1, including the other two promissory notes whose combined total is $5 million. Several clues indicate that the $3.3 million in interest earnings promised to Plaintiff applies across all three notes, not to each of the notes individually.

First, the minimum interest amount expressly refers to what Plaintiff "will earn," not to what Plaintiff will charge. Second, the two smaller notes contain the exact same language as Note 1; they also provide that the "floor interest rate" is 22% and that the minimum amount of interest

Plaintiff "will earn" is $3.3 million.  (Note 2, PageID.327; Note 3, PageID.334.)  Third, $3.3 million in interest earnings perfectly accords with the stated 22% interest rate when that rate is applied to the combined total loan amount of $15 million.  Fourth, the parties linked the three loans together.  As part of their transaction, the parties entered a cross-collateralization and cross-default agreement expressly tying all three loans together, such that a default on any one of the loans would constitute a default on all the others.  (Cross-Collateralization/Cross-Default Agreement, ECF No. 113-5, PageID.2858–59.)  Finally, a loan commitment issued by Plaintiff just two days before Note 1 specified that Plaintiff would lend $15 million to Walloon Lake Holdings at a "floor interest rate" of 22%, and that Plaintiff would earn "a minimum" of $3.3 million in interest on *that* loan amount.  (Mortgage Loan Commitment, ECF No. 113-1, PageID.2837.)  All of the foregoing indicates that the initial interest rate for the $10 million loan was 22%, which does not exceed the criminal usury rate of 25%.

On the other hand, Note 1 also provides that, upon default, the interest rate automatically increases by 10%, which would result in a rate of 32%.  (Note 1, PageID.26.)  And Defendants have provided evidence that Plaintiff charged this rate.  (*See* Monthly Billing Statement (Nov. 29, 2024), ECF No. 18-3, PageID.350 (specifying an "interest rate" of "32.00%").)  Accordingly, it appears that Plaintiff may have violated Michigan's criminal usury statute.

As discussed in a separate opinion, Plaintiff might qualify for an exception to the 25% cap on interest.  (11/26/2025 Op. 3-7, ECF No. 110.)  Specifically, it might qualify for the exception that applies to "a note . . . of $100,000.00 or more" where "the bona fide primary security . . . is a lien against real property other than a single family residence."  Mich. Comp. Laws § 438.31c(11). At this stage, however, the Court does not possess sufficient information to determine whether this exception applies to Note 1.  In other words, it is not clear whether the commercial properties

securing Note 1 were the "bona fide primary security" for Plaintiff's lien against real property. The parties will have the opportunity to brief this issue through summary judgment, after discovery is complete.  The Court will not permit Plaintiff to obtain rents through MUARA where Defendants have asserted a potentially viable defense to enforcement of the note and Plaintiff's briefing does not respond to that defense.  MUARA expressly provides that its enforcement rights are subject to claims or defenses arising under state law.  *See* Mich. Comp. Laws § 554.1059(3).  The Court will therefore adjudicate that defense before permitting Plaintiff to collect rents.

It is also possible that, even if Plaintiff violated Michigan's criminal usury statute, Plaintiff would only be barred from collecting interest on the loan and would not be barred from collecting the principal.  After all, Michigan's civil usury statute only bars a lender charging a usurious rate from recovering "any interest, any official fees, delinquency or collection charge, attorney fees or court costs." Mich. Comp. Laws § 438.32.  It does not bar the lender from recovering the principal. *See Nepal 2012, LLC v. Paniccia*, No. 364885, 2024 WL 4100087, at \*3 (Mich. Ct. App. Sept. 5, 2024) (citing Mich. Comp. Laws § 438.32 and concluding that a trial court erred by extinguishing the entire debt where the lender charged an interest rate higher than 25%); *Ross v. Peyerk*, No. 357597, 2022 WL 1714582, at \*3–4 (Mich. Ct. App. June 23, 2022) (concluding that a lender charging an interest rate greater than 25% could collect the principal but not the interest).

But "it is not entirely clear what relationship" the civil usury statute has to the criminal usury prohibition and the wrongful-conduct rule.  *Soaring Pine Cap. Real Est. & Debt Fund II, LLC v. Park St. Grp. Realty Servs., LLC*, 999 N.W.2d 8, 19 n.16 (Mich. 2023).  In *Soaring Pine*, the Michigan Supreme Court expressly declined to clarify whether the wrongful-conduct rule would completely bar a lender from collecting any part of its loan.  *Id.* at 14 n.8.  Similarly, this Court declines to resolve that issue because the parties have not adequately addressed it.

6

Defendants contend that Plaintiff's wrongful conduct would bar enforcement of Note 1 in its entirety.  Plaintiff's briefing does not respond to that argument.

### III. CONCLUSION

For the reasons herein, the Court will deny Plaintiff's motion to collect rents.  An order will enter consistent with this Opinion.

Dated: March 6, 2026                                      /s/ Hala Y. Jarbou
                                                                        HALA Y. JARBOU
                                                                        CHIEF UNITED STATES DISTRICT JUDGE